IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**JUN 2 3 2000**

Michael N. Milby
Clerk of Court

| | |
|---|---|
| WELLS FARGO BANK TEXAS, N.A. § | |
|     Plaintiff          § | CIVIL ACTION NO. **B-00-094** |
|                         § | |
| KAYLA FISHERIES, INC., RICARDO § | IN ADMIRALTY |
| RIVERA, THREE ISLAND FISHERIES § | |
| INC., M/V MISS KAY and M/V    § | |
| NEGRITA, their engines, nets, tackle, § | |
| apparel, and furniture, etc., <u>in rem</u>, § | |
|     Defendants       § | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW WELLS FARGO BANK TEXAS, N.A. formerly, FIRST VALLEY BANK, then NORWEST BANK TEXAS, N.A. Plaintiff herein, complaining of KAYLA FISHERIES, INC., RICARDO RIVERA <u>in personam</u>, the respective owners of the following named motor vessels, M/V MISS KAY and M/V NEGRITA, their engines, nets, tackle, apparel, and furniture, etc. <u>in rem</u>, RICARDO RIVERA, as guarantor, and THREE ISLAND FISHERIES, INC., as guarantor, herein collectively referred to as Defendants, and for cause of action would respectfully show unto the Court the following:

I.

## PARTIES

1) Plaintiff is a national banking association, having its principal place of business in Cameron County, Texas.

---

PLAINTIFF'S COMPLAINT
W:\first*.valley b\vessel foreclosure\kayla fisheries inc\"  tmb/vpg
                                    Page 1 of 7

2)   Defendant KAYLA FISHERIES, INC., a Texas corporation, has its principal place of business in Port Isabel, Cameron County, Texas, Defendant THREE ISLAND FISHERIES, INC., a Texas corporation, has its principal place of business in Brownsville, Cameron County, Texas and both entities may be served with process by serving their registered agent as follows:  Ricardo Rivera, 129 Channel St., Box 1279, Port Isabel, TX 78578; or in the alternative, should Defendants fail to appoint or maintain a registered agent in this State, or if its registered agent cannot with reasonable diligence be found at the registered office, then service of citation shall be had upon the Secretary of State as agent of such corporation as provided by the Texas Business Corporations Act. Art. 2.11.  Service on the Secretary of State of any process, notice, or demand shall be made by delivering to and leaving with him, or with the Assistant Secretary of State, or with any clerk having charge of the corporation department of his office, duplicate copies of such process, notice, or demand.  In the event any such process, notice, or demand is served on the Secretary of State, he shall immediately cause one of the copies thereof to be forwarded by registered mail, addressed to the corporation at its registered office.   Any service so had on the Secretary of State shall be returnable in not less than thirty (30) days.

Defendant RICARDO RIVERA is an individual, resident of Cameron County, Texas, who may be served with process at 129 Channel St., Box 1279, Port Isabel, TX 78578.

Defendant M/V MISS KAY is a motor vessel, believed to be wholly owned by Defendant KAYLA FISHERIES, INC., Defendant M/V NEGRITA is a motor vessel,

believed to be wholly owned by Defendant RICARDO RIVERA, both of which may be found for service of process and arrest at Port Isabel Texas.

II.

## JURISDICTION AND VENUE

3)  This is a case involving admiralty and maritime jurisdiction within the meaning of Rule 9(h) and Supplemental Rule C of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction under 46 USC §31342 and 28 USC §1333.  The Defendant Vessels are or will be during the pendency of the process within this district and within the jurisdiction of this court.

III.

## FACTS OF THE CASE

4)  On or about the 24th day of June, 1996, Defendant KAYLA FISHERIES, INC. executed and delivered to Plaintiff, a promissory note bearing such date and year in the principal amount of $85,000.00 and executed and delivered to Plaintiff, a Renewal and Modification Note dated the 14th day of March, 1997 and thereby promised to pay Plaintiff, or its order, the principal sum of $85,000.00, plus accrued interest as stated in the original Note and any and all renewals and extensions thereof.  The Note is payable as follows:

> "Payments of interest shall be due and payable for the months of February through July, beginning April 14, 1997 and continuing regularly and monthly until July 14, 1997, then payments of $2,025.00 principal plus interest beginning August 14, 1997 and continuing regularly and monthly through January 14, 1998 said payments will continue in a like manner, monthly and regularly as set out until March 14, 2000; at that time all principal and accrued interest shall be due and payable.   Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal."

CISPDF - www.fwsite.com

Payments were to be made at plaintiff's office at 1800 W. Highway 100, Port Isabel, Cameron County, Texas. Said Note currently bears interest from June 7, 1999 at the interest rate is 3.25 percent over the prime lending rate as published in the Money Rates Section, under the heading "prime rate", of the Southwest edition of the <u>Wall Street Journal</u> as it changes from day to day.

5)    The Note further provides that Defendants will pay all costs of collection and enforcement, including attorneys' fees of fifteen percent (15%) of the principal and interest due on this Note and court costs in addition to any other amount due of principal and interest accrued in the event the Note is placed in the hands of an attorney for collection.

6)    The Note further provides that in the event of default in the payment of any installment, either principal or interest, the holder, at its option, may declare all of the remainder of said debt due and payable.   True copies of the promissory note and renewal and modification note are attached hereto marked Exhibits "A" and "B", respectively, and made a part hereof for all purposes.

7)    On or about March 14, 1997 RICARDO RIVERA executed two guarantees of the Note, one as President of THREE ISLAND FISHERIES, INC. and one individually.  Copies of the Guarantees executed by RICARDO RIVERA are attached hereto marked Exhibits "C" and "D", respectively, and made a part hereof for all purposes.

8)    The Defendants have defaulted in the payment on the note.

9)    Plaintiff is the legal owner and holder of such note and the person entitled to enforce it.  Plaintiff made presentment and formal written demand upon Defendants

to pay the note on various dates during 1999 and 2000.  Defendants failed and refused to pay same and the Note having matured and become due and payable by virtue of such default, Plaintiff placed the promissory note in the hands of the undersigned attorneys for collection, agreeing to pay them attorneys' fees as provided in the Note.

10)    Defendants are indebted to Plaintiff in the principal amount of $60,470.09 plus accrued interest in the amount of $6,716.78 and such interest as may accrue at the rate provided in the Note, presently at the rate of $21.12 per day.

11)    Plaintiff has and claims a maritime lien against the Defendant vessels in the amount of the accelerated principal and interest due to date plus interest and attorney's fees as stated in the Note.   True copies of the First Preferred Mortgages are attached hereto marked as Exhibits "E" and "F" and made a part hereof for all purposes.

IV.

ATTORNEYS' FEES

Plaintiff would further show the court that by reason of the Defendants' default and failure to cure their default upon demand, Plaintiff has been required to retain the services of the undersigned attorneys and is entitled to recoup reasonable attorneys' fees in connection with the collection of said promissory note and foreclosure of its first preferred mortgages, it having been agreed by contract that a reasonable fee would be 15% of the amount due under the note.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

A.    that process in due form of law according to the rules and practice of this court in causes of maritime and admiralty jurisdiction may issue against the Vessels MISS

KAY and NEGRITA, their engines, tackle, etc., citing all persons claiming any interest to appear and answer on oath all and singular the matters stated above;

B.  that process be issued against the Defendants, Defendants' Vessels and Defendants' Guarantors named herein, and that said Vessels, their engines, tackle, apparel, etc. and all other necessaries thereunto belonging and appertaining, be condemned and sold to pay the demands and claims aforesaid with interest;

C.  that Plaintiff 's claims be established as maritime liens in the amount set forth above against the named Defendant Vessels;

D.  that Plaintiff recover the full amount of the indebtedness from the *in personam* and guarantor Defendants;

E.  that Plaintiff recover prejudgment and postjudgment interest as provided by the terms of the Note and law and costs of suit;

F.  that Plaintiff recover attorneys' fees as provided by the terms of the Note; and

G.  for such other and further relief to which Plaintiff may be justly entitled.

RESPECTFULLY SUBMITTED,

RENTFRO, FAULK & BLAKEMORE, LLP


By:_____
T. MARK BLAKEMORE
SBN: 02431800
Federal Admn. No. 1915

ATTORNEYS FOR PLAINTIFF
WELLS FARGO BANK TEXAS, N.A.:
RENTFRO, FAULK & BLAKEMORE, LLP
185 E. Ruben M. Torres Sr. Blvd.
Brownsville, TX 78520-9136
(956) 541-9600-phone
(956) 541-9695-facsimile
E-Mail: attorneys@rfbllp.com

## VERIFICATION

| THE STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned authority, on this day personally appeared, MARGARET RIVERA, who, being by me first duly sworn, deposed and said:

"My name is MARGARET RIVERA. I am the Port Isabel Branch Manager of WELLS FARGO BANK TEXAS, N.A., Plaintiff in the above and foregoing entitled and numbered action. In my capacity, I am familiar with the operations and loan records of WELLS FARGO BANK TEXAS, N.A. I have read the foregoing Complaint and the contents thereof are true and correct and within my own personal knowledge."

FURTHER AFFIANT SAITH NOT.

_____
MARGARET RIVERA

SWORN TO AND SUBSCRIBED BEFORE ME by the said, MARGARET RIVERA of WELLS FARGO BANK TEXAS, N.A. TO CERTIFY WHICH witness my hand and seal of office this __22nd__ day of June, 2000.

_____
Notary Public, State of Texas

MARIA M. ROSALES
Notary Public
STATE OF TEXAS
My Comm Exp Aug. 9, 2003

# PROMISSORY NOTE

$85,000.00

Port Isabel, Texas
June 24, 1996

FOR VALUE RECEIVED, I, WE, or either of us promise to pay to the order of FIRST VALLEY BANK at its banking house in Port Isabel, Cameron County, Texas, the sum of EIGHTY FIVE THOUSAND AND NO/100 DOLLARS ($85,000.00), in legal and lawful money of the United States of America, with interest thereon from date of funding hereof until maturity. The rate of interest herein shall increase or decrease each day to become the minimum prime lending rate for large U.S. Money Center Commercial Banks as published in the Money Rates Section of the Southwest version of The Wall Street Journal (which rate is currently eight and one-quarter percent [8.25%]), plus two and three-quarters percent (2.75%) per annum, thus, the beginning interest rate on this Note is eleven percent (11%) per annum. This Note is payable as follows, to-wit:

Interest only, computed at the rate above specified on the unpaid principal balance hereof, shall be due and payable on the 24th day of February, March, April, May, June and July of each year during the three-year term of this Note, with the first of such installments commencing on July 24, 1996 and continuing regularly thereafter as per the aforestated payment schedule;

Principal payments in the amount of TWO THOUSAND TWENTY-FIVE AND NO/100 DOLLARS ($2,025.00), each, plus accrued interest computed at the rate specified above, shall be due and payable on the 24th day of August, September, October, November, December, and January of each year during the three-year term of this Note, with the first of such installments commencing August 24, 1996 and continuing regularly thereafter as per the aforestated payment schedule; and

One final payment of the unpaid balance of principal and accrued unpaid interest shall be due and payable on the 24th day of June, 1999.

Matured unpaid amounts will bear interest computed on a full calendar year 365/365 days basis or on a 366/366 days basis, in the event that the year is a leap year, at the highest legal rate of interest allowed by Texas law, unless Federal law allows a higher interest rate, in which case, Borrower agrees to pay the rate allowed by Federal Law. If applicable law does not set a maximum rate of interest for matured unpaid amounts, then Borrower agrees that the maximum rate for such amounts shall be eighteen percent (18%) per annum.

---

Promissory Note
Kayla Fisheries, Inc. to First Valley Bank

F:\WP51\FORMS\CORP\KAYLA.NTE

Page 1

Exhibit _____ A _____

Page __1__ Of __3__

In the event of default in the payment of any installments, either principal or interest, when due, or in the actual performance of any of the "events of default" specified in said Mortgage, the holder hereof may, at its option, declare all of the remainder of said debt due and payable, and any failure to exercise said option shall not constitute a waiver of the right to exercise same at any other time.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the Probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including reasonable attorney's fees.

Each maker, surety and endorser hereon waives grace, acceleration, presentment and demand for payment, notice of nonpayment, protest and notice of protest, and consents that the time of payment may be extended from time to time without any notice to any of them.

Full authority is hereby given the legal holder hereof to apply thereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said Bank; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity or any time before maturity in the event the holder feels unsafe or insecure. The holder may become the purchaser at such sale.

Borrower and Lender intend that the loan evidenced by this Note (the "Loan") shall be in strict compliance with applicable usury laws. If at any time any interest contracted for, charged, or received under this Note or otherwise in connection with the Loan would be usurious under applicable law, then regardless of the provisions of this Note or the documents and instruments evidencing, securing or otherwise executed in connection with the Loan or any action or event (including, without limitation, prepayment of principal hereunder or acceleration of maturity by the Lender) which may occur with respect to this Note or the Loan, it is agreed that all sums determined to be usurious shall be immediately credited by the Lender as a payment of principal hereunder, or if this Note has already been paid, immediately refunded to Borrower. All compensation which constitutes interest under applicable law in connection with the Loan shall be amortized, prorated, allocated and spread over the full period of time any indebtedness is owing by Borrower, to the greatest extent permissible without exceeding the applicable maximum rate allowed by applicable law in effect from time to time during such period.

---

IN THE EVENT ANY ITEM, ITEMS, TERMS OR PROVISIONS CONTAINED IN THIS INSTRUMENT ARE IN CONFLICT WITH THE LAWS OF THE STATE OF TEXAS, OR FEDERAL LAW, THIS INSTRUMENT SHALL BE AFFECTED ONLY AS TO ITS APPLICATION TO SUCH ITEM, ITEMS, TERMS OR PROVISIONS, AND SHALL IN ALL OTHER RESPECTS REMAIN IN FULL FORCE AND EFFECT. IT IS UNDERSTOOD AND AGREED THAT IN NO EVENT AND UPON NO CONTINGENCY SHALL THE BORROWER, OR ANY PARTY LIABLE THEREON, OR THEREFORE, BE REQUIRED TO PAY INTEREST IN EXCESS OF THE RATE ALLOWED BY THE LAWS OF THE STATE OF TEXAS OR FEDERAL LAW, IF SUCH LAW PERMITS A GREATER RATE OF INTEREST. THE INTENTION OF THE PARTIES BEING TO CONFORM STRICTLY TO THE USURY LAWS AS NOW OR HEREAFTER CONSTRUED BY THE COURTS HAVING JURISDICTION.

This Note is secured by a First Preferred Ship's Mortgage of even date herewith covering the whole of the Fishing Vessel MISS KAY (EX MISS MARY M), Official No. 547298, executed by Kayla Fisheries, Inc. in favor of FIRST VALLEY BANK, Port Isabel, Texas, and is additionally secured by a Second Preferred (Ship's) Mortgage of even date herewith covering the whole of the Fishing Vessel NEGRITA, Official No. 665573, executed by Ricardo Rivera in favor of FIRST VALLEY BANK, Port Isabel, Texas.

KAYLA FISHERIES, INC.

BY: _Ricardo Rivera_
Ricardo Rivera, President

---

27 2073/02

## RENEWAL AND MODIFICATION NOTE

**DATE:** March 14, 1997        **ORIGINAL NOTE DATE:** June 24, 1996

**MAKER:** Kayla Fisheries, Inc.

**MAKER'S MAILING ADDRESS:** HC 70, Box 7, Brownsville, Cameron County, Texas.

**PAYEE:** First Valley Bank

**PLACE FOR PAYMENT:** 203 N. Arroyo Blvd., Los Fresnos, Cameron County, Texas  78566

**PRINCIPAL AMOUNT:** $85,000.00        **ORIGINAL NOTE AMOUNT:** $85,000.00

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:**  The interest rate shall be 3.25 percent over the prime lending rate as published in the Money Rates Section, under the heading "prime rate", of the Southwest edition of the Wall Street Journal as it changes from day to day.

**ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:**  The maximum legal rate allowed by State and Federal law.

**TERMS OF PAYMENT:**

Payments of interest shall be due and payable monthly for the months of February through July, beginning April 14, 1997 and continuing regularly and monthly until July 14, 1997, then payments of $2,025.00 principal plus interest beginning August 14, 1997 and continuing regularly and monthly through January 14, 1998 said payments will continue in a like manner, monthly and regularly as set out until March 14, 2000; at that time all principal and accrued interest shall be due and payable. Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal.

**PREFERRED MORTGAGE:**

1.    **Date:**  June 24, 1996
      **Owner:**    Kayla Fisheries, Inc.
      **Mortgagee:**  First Valley Bank
      **Vessel:**      Miss Kay (ex Miss May M)        **Official No.:**  547298
      Recording information: recorded on August 2, 1996, Book No. 96-59, Instrument No. 585

2.    **Date:**  June 24, 1996
      **Owner:**    Ricardo Rivera

1

Exhibit_____B_____

Page __1__ Of __3__

CVisPDF - www.fastio.com

**Mortgagee:** First Valley Bank
**Vessel:** Negrita                    O f f i c i a l      N o . :
665573

**Recording information:** recorded on August 2, 1996, Book No. 96-63, Instrument No. 38

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and extension, but not in extinguishment of the note dated June 24, 1996 described herein.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any installment becomes overdue for more than ten (10) days, at bank's option, five percent (5%) of the overdue installment amount will be charged in order to defray the expense of handling the delinquent payment.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE**

2

**CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Kayla Fisheries, Inc.

By: _____
Ricardo Rivera, President

File No.: 972294
Loan No.: 272073102

3

Exhibit_____B_____

Page ___3___ Of ___3____

# GUARANTY

| Port Isabel | Texas |
|---|---|
| (City) | (State) |

## March 14, 1997

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce __First Valley Bank__ (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of __Kayla Fisheries, Inc.__ (herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____.
__Loan Number 272073102__

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the Joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ __Unlimited__ (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

Exhibit_____C_____

Page _1_ Of _1_

__Three Island Fisheries, Inc.__

by: _____
     __Ricardo Rivera, President__

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

BANKERS SYSTEMS, INC. ST. CLOUD, MN 56301 (1-800-397-2341) FORM

# GUARANTY

| Port Isabel | | Texas |
|---|---|---|
| (City) | | (State) |

**March 14, 1997**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce __First Valley Bank__ (herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of ___ __Kayla Fisheries, Inc__ (herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness". Without limitation, this guaranty includes the following described debt(s): _____ __Loan Number 272073102__

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ __Unlimited__ (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ; ☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

Exhibit_____ D _____

Page __1__ Of __1__

_Ricardo Rivera_

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

# This First Preferred Mortgage, on the vessel(s) -

Official No. **547298**
MISS KAY
(EX MISS MARY M)

dated _____ June 24, _____ 19 96

Amount of Mortgage $ 85,000.00

Maturity Date _____ 19___

**and made by** Kayla Fisheries, Inc. (Sole Mortgagor)
129 Channel Road (P.O. Box 1279 - Mailing), Port Isabel, Texas 78578
(hereinafter called "Owner") to First Valley Bank (Sole Mortgagee)
1800 W. Highway 100, Port Isabel, Texas 78578
_____ (hereinafter called "Mortgagee").

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated _____ June 24, _____ 19 96 in the principal amount of $ 85,000.00 _____, payable to the order of Mortgagee as follows:

    As therein provided.

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the _____Oil Screw_____ (Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| MISS KAY | Falling Waters, WV | 547298 | | |

| Enrollment Number | Place Issued | Date Issued |
|---|---|---|
| | | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, tools, pumps, pumping and other equipment, and all other appurtenances thereunto appertaining and belonging, and all additions, improvements and replacements hereafter made in or to said vessel, or any part thereof, or in or to her equipment and appurtenances aforesaid (all of which, whether to be demand or the term "vessel" hereafter, and said document(s) being deemed included within the term "vessel" as herein used).

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever.

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or his successors or assigns shall perform and observe and each and all the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I.— Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect, and all notes and agreements here for the execution, delivery and validity hereof, and if the good faith, diligent filed herewith, and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of _____Texas_____ _____ and authorized to do business and is in good standing in any other State wherein Owner regularly does business.

2. Owner hereby covenants and warrants the vessel free from all liens and encumbrances whatsoever except as may hereinafter be specified and shall warrant and defend title to and possession of all said every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any part or future relationship.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured against such risk, loss, damage insurance with policy or policies not containing any coverage herein, and in the which coverage insurance for the benefit of Mortgagee herein, to at least the amount of the vessel insured hereunder of this Mortgage, and shall maintain insurance in other protection and indemnity risks, towing risks, and other risks, from time to time specified by Mortgagee, and all insurance, if in force, may be in the name of other risks and liabilities from time to time specified by Mortgagee, and all insurance, if in force, may be in the name of Owner and shall be by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and if shall request endorsements to agree and authority to make, to Mortgagee's request. Failure to modify, and shall request endorsements to agree and authority to make, to Mortgagee's request. Failure to make material change to any insurance coverage. Any material change to any insurance coverage or deliver the evidence satisfactory to the United States, any form and/or any other United States underwriter for such insurance may be by a written consent of not less, at or and name Owner shall be in effect or take Owner that any Owner required shall cause everything necessary to establish such insurance.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules and regulations or order of the United States, any State and/or any other Governmental authority with the jurisdiction of and under which the vessel may from time to time be documented. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of this vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than at the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

## ARTICLE II — Default

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or any (the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any loss for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits or of its title to the vessel, or for any other purpose whatsoever, and all damages sustained by Mortgagee because of default, shall be paid by Owner on demand, together with interest at 10% per annum, and until so paid shall be a lien from Owner to Mortgagee secured by this lien hereof. Provided, that Mortgagee shall not be obligated to make any such advance or expenditure, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

E

Neither the mortgagors, the vessel owner, nor the managing owner, ship's husband, master, nor any person to whom the management of the vessel is entrusted, whether appointed by the mortgagors, as owners of the said vessel, or by a charterer, or by an owner pro hac vice thereof, has or shall have any right, power or authority to create, incur, or permit to be imposed upon this vessel any lien whatsoever other than for crew's wages, wages of stevedores or salvage and a notice reading as follows, printed in plain type of such size that the paragraph of the reading matter shall cover a space not less than six inches wide by nine inches high, framed under glass, shall be placed and kept prominently in the chart room and in the master's cabin of the vessel:

## "NOTICE OF PREFERRED MORTGAGE

THIS VESSEL IS COVERED BY A FIRST PREFERRED MORTGAGE OF VESSEL

UNDER THE LAWS OF THE UNITED STATES TO SECURE PAYMENT TO

### FIRST VALLEY BANK

OR ASSIGNS, THE UNPAID BALANCE OF CERTAIN INDEBTEDNESS.

UNDER THE TERMS THEREOF NEITHER THE MORTGAGOR AND OWNER

OF SAID VESSEL, NOR THE MANAGING OWNER, SHIP'S HUSBAND,

MASTER, NOR ANY PERSON TO WHOM THE MANAGEMENT OF THE

VESSEL IS ENTRUSTED, WHETHER APPOINTED BY THE MORTGAGOR,

AS OWNER OF SAID VESSEL, OR BY A CHARTERER, OR BY AN OWNER

PRO HAC VICE THEREOF HAS ANY RIGHT, POWER, OR AUTHORITY TO

CREATE, INCUR, OR PERMIT TO BE IMPOSED UPON THIS VESSEL ANY

LIENS WHATSOEVER OTHER THAN FOR CREW'S WAGES, WAGES OF

STEVEDORES OR SALVAGE."

Exhibit ____E____

Page __3__ Of __4__

### ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

### ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

**FUTURE ADVANCES**  This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

KAYLA FISHERIES, INC.

BY: _____
     Ricardo Rivera, President

### ACKNOWLEDGMENT

THE STATE OF TEXAS       X
COUNTY OF CAMERON        X

This instrument was acknowledged before me by the said

RICARDO RIVERA, President of KAYLA FISHERIES, INC., a Texas corporation,

on behalf of said corporation, on this 24th day of June, 1996.

_____
Notary Public in and for the
State of Texas



My Commission Expires:

### AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____   COUNTY OF _____ ss.:

being (severally) duly sworn, depose(s) and say(s) that: he is (they are) the individual Mortgagor(s) _____ of _____ the corporation described in and who (which) executed the foregoing mortgage; and that the said mortgage is made in good faith and without any design to hinder, delay or defraud any existing or future creditor of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages whatsoever against said vessel, other than the lien of the foregoing mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____

day of _____, 19_____     _____

      (SEAL)

_____          _____
     (Notary Public)                          Signature(s) of Affiant(s)

Exhibit _____E_____

Page __4__ Of __4__

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED
SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING:

Official No. 665573

**SECOND**

This ~~First Preferred~~ **Mortgage,** on the vessel(s) ___ NEGRITA ___

dated ___ June 24, ___ 19 96

Amount of Mortgage $ 85,000.00

Maturity Date ___ 19 ___

and made by ___ Ricardo Rivera (Sole Mortgagor) ___
129 Channel Road (P.O. Box 1279 - Mailing), Port Isabel, Texas  78578

(hereinafter called "Owner"), to ___ First Valley Bank  (Sole Mortgagee) ___
1800 W. Highway 100, Port Isabel, Texas  78578 ___ (hereinafter called "Mortgagee").

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated ___ June 24, ___ 19 96 in the principal amount of $ 85,000.00 executed by Kayla Fisheries, Inc. ~~payable to the order of Mortgagee~~ as therein provided.

This Mortgage is given by the Mortgagor herein as additional collateral to secure the $85,000.00 note executed of even date herewith by Kayla Fisheries, Inc., payable to the order of First Valley Bank.

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents

Oil Screw

mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the ___ (Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| NEGRITA | Falling Waters, WV | 665573 | | |

| Enrollment Number | Place Issued | Date Issued |
|---|---|---|
| | | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and all additions, improvements and replacements now or hereafter made in or to said vessel or any part thereof, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever.

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I.— Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect, and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of ___ Texas ___ and authorized to do business in and good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinafter be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up any actual Mortgages and/or any assignee of this Mortgage or any claim of Owner against Mortgagee and/or assignee under any part or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuations not exceeding the amount insured and, in the aggregate as to all vessels mortgaged hereto, in at least the amount due hereon, and in favor of Mortgagee, and shall maintain adequate insurance as to war protection and indemnity risks, owner's liability risk, if the vessel performs towage, employers' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree promptly in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee. If evidence satisfactory to Mortgagee of such insurance and the due renewal thereof shall not be furnished, or if such insurance shall cease to be in full force, Mortgagee may effect such insurance and the premiums therefor shall be an obligation secured hereby.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated and/or of any department or agency thereof, nor operate the vessel from the limits of the United States save on voyage with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

CMPDF - www.texis.com

5. Neither the Owner, Agent nor Master of this vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel any part thereof any lien whatsoever other than it the Mortgages or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under order of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, annually, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

## ARTICLE II. — *Default*

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action compatible thereto; or rendition of a money judgment against Owner for the payment of money; and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, or by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum; and/or

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profit, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense and/or sell the vessel free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment first of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances, costs and expenses made or incurred by Mortgagee hereunder, and all damages sustained by Mortgagee, together with interest thereon ... at the rate of 10% per annum, and until so paid shall be a lien due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advance or expenditure, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

Neither the mortgagors, the vessel owner, nor the managing owner, ship's husband, master, nor any person to whom the management of the vessel is entrusted, whether appointed by the mortgagors, as owners of the said vessel, or by a charterer, or by an owner pro hac vice thereof, has or shall have any right, power or authority to create, incur, or permit to be imposed upon this vessel any lien whatsoever other than for crew's wages, wages of stevedores or salvage and a notice reading as follows, printed in plain type of such size that the paragraph of the reading matter shall cover a space not less than six inches wide by nine inches high, framed under glass, shall be placed and kept prominently in the chart room and in the master's cabin of the vessel:

### "NOTICE OF PREFERRED MORTGAGE

THIS VESSEL IS COVERED BY A FIRST PREFERRED MORTGAGE OF VESSEL

UNDER THE LAWS OF THE UNITED STATES TO SECURE PAYMENT TO

### FIRST VALLEY BANK

OR ASSIGNS, THE UNPAID BALANCE OF CERTAIN INDEBTEDNESS.

UNDER THE TERMS THEREOF NEITHER THE MORTGAGOR AND OWNER

OF SAID VESSEL NOR THE MANAGING OWNER, SHIP'S HUSBAND,

MASTER, NOR ANY PERSON TO WHOM THE MANAGEMENT OF THE

VESSEL IS ENTRUSTED, WHETHER APPOINTED BY THE MORTGAGOR,

AS OWNER OF SAID VESSEL, OR BY A CHARTERER, OR BY AN OWNER

PRO HAC VICE THEREOF HAS ANY RIGHT, POWER, OR AUTHORITY TO

CREATE, INCUR, OR PERMIT TO BE IMPOSED UPON THIS VESSEL ANY

LIENS WHATSOEVER OTHER THAN FOR CREW'S WAGES, WAGES OF

STEVEDORES OR SALVAGE."

Exhibit_____ F

Page ___3___ Of __4__

## ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES  This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor, and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

_____
RICARDO RIVERA

## ACKNOWLEDGMENT

THE STATE OF TEXAS      }

COUNTY OF CAMERON      }

This instrument was acknowledged before me on the 24th day of June, 1996 by RICARDO RIVERA.

_____
Notary Public in and for the
State of Texas

My Commission Expires:

## AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____  County of _____ ss.:

being (severally) duly sworn, depose(s) and say(s) that he is (they are) the individual Mortgagor(s) _____ of _____ the corporation described in and who (which) executed the foregoing mortgage and that the said mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages outstanding against said vessel, other than the lien of the foregoing mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____

day of _____, 19_____          _____

(SEAL)

_____          _____
(Notary Public)                                  Signature(s) of Affiant(s)

Exhibit____F_____

Page ___4___ Of ___4___

OATH OF CITIZENSHIP OR PROOF THEREOF BY MORTGAGEE IS FILED SIMULTANEOUSLY WITH PRESENTATION OF THE MORTGAGE FOR RECORDING.